FILED

2005 Sep-30  AM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **TABITHA SHELNUTT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **CV-04-BE-3036-W** |
| **NHC HEALTHCARE OF** | ] | |
| **ANNISTON, L.L.C.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

This case is before the court on Defendant's Motion for Summary Judgment (doc. 20).

For the reasons stated in the memorandum opinion entered contemporaneously with this Order,

the court finds that the Motion for Summary Judgment is due to **GRANTED in part** and

**DENIED in part**.

Specifically, Defendant's Motion is **DENIED** with respect to Count One's FMLA claims

of interference and unlawful termination/retaliation.  Defendant's Motion is **GRANTED** with

respect to Count Two's failure to accommodate claim; Count Three's disparate treatment claim;

and Count Four's unlawful termination/retaliation claim under the ADA.

### FACTS

As required on a Motion for Summary Judgment, the following facts are stated in the

light most favorable to the non-moving party.

Plaintiff Tabitha Shelnutt worked as a social worker for Defendant NHC Healthcare of

1

Anniston, LLC.  Defendant is a nursing home facility.  Plaintiff worked for Defendant from January 5, 2002 until March 22, 2004.  The parties agree that during the first two years of Plaintiff's employment, Plaintiff performed adequately.  During this period Plaintiff earned several commendations from supervisors, pay raises, and congratulatory notes for her file. However, the parties disagree as to Plaintiff's performance from January 2004 until she was terminated on March 22, 2004.

Defendant argues that Plaintiff's performance from January through March 2004 was characterized by excessive tardiness, complaints about the difficulty of her job, and assorted medical issues.  In January 2004, Plaintiff was late to work on sixteen out of twenty-two working days.  In February 2004, Plaintiff was tardy seventeen out of twenty days.  On February 26, 2004, Plaintiff's supervisor (Ms. Hanshaw) discovered that Plaintiff had neglected to complete a number of service recovery forms.  Hanshaw had to personally help Plaintiff complete the forms, and thereafter counseled Plaintiff in writing about this incident.

Plaintiff disputes that her work performance declined from January to March 2004.  The record indicates she received positive written feedback regarding her conduct during this time period.  However, during the last week in April 2004, Plaintiff requested and was granted leave for a doctor's appointment scheduled for March 3, 2004.  On March 2, 2004, Plaintiff received a poor performance evaluation in the areas of quality of job performance, attendance, customer relations skills, and departmental policies and procedures.  Ms. Hanshaw prepared this evaluation.  Hanshaw discussed the evaluation with Plaintiff on that same day, and Plaintiff agreed to write a performance improvement plan that would be reviewed after one month.  On March 3, 2004, Plaintiff went to the hospital and was diagnosed with mitral valve prolapse.

2

Plaintiff was discharged from the hospital on March 9, 2004.  Plaintiff informed Defendant about her medical condition and presented a doctor's note excusing her from work until March 17, 2004.  However, on March 16, 2005, Plaintiff's doctor extended her rest period until March 22, 2004.  Plaintiff met with Ms. Rebecca Helton, the facility administrator, and told her about the extension.  At that meeting, Helton instructed Plaintiff to complete her performance improvement plan pursuant to her March 2, 2004 performance evaluation.  During the entire period of Plaintiff's absence, Plaintiff received her full pay and the issue of the FMLA never came up.

When Plaintiff returned to work on March 22, 2004, Helton requested that Plaintiff and Hanshaw meet with her to discuss Plaintiff's performance improvement plan.  At the meeting, Plaintiff presented Helton and Hanshaw with a letter setting forth her job responsibilities, and indicating which duties she would not undertake.  After reading the letter, Helton and Hanshaw explained that the plan was unsatisfactory and that she was required to perform some of the duties she listed as being unwilling to do.  When Plaintiff indicated she might not be able to fulfill all of those duties, Helton fired Plaintiff.

## II.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases where no genuine issues of material fact are present.  *See* Fed. R. Civ. P. 56.  A court must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).  The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on [his] pleadings." *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in [its] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

### III.  DISCUSSION

**A.  The Family Medical Leave Act.**

The FMLA affords an eligible employee up to twelve weeks of leave "because of a serious health condition that makes the employee unable to perform the functions of the position

4

of such employee." 29 U.S.C. § 2612 (a)(1)(D) (2005).  To enforce this right, the FMLA creates

two types of claims: interference and enforcement claims.

### 1. Interference.

Interference claims arise when an employer denies or otherwise interferes with a qualified

employee's substantive rights under the FMLA.  In an interference claim, "an employee need

only demonstrate . . . that he was entitled to the benefit denied."  *Strickland v. Water Works &*

*Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001).  In the absence of Eleventh Circuit authority

specifically delineating the elements of an interference claim, the court looks to guidance from

other courts.  In *Sarali v. Automation & Modular Components, Inc.*, the Sixth Circuit described

the elements of an FMLA interference claim as requiring proof that (1) the plaintiff is an eligible

employee under the FMLA; (2) the defendant is a covered employer under the FMLA; (3) the

plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave appropriate notice to the

defendant of his intention to take leave; and (5) the defendant denied the plaintiff benefits to

which he or she was entitled.  405 F.3d 446, 454 (6th Cir. 2005).

### 2. Retaliation.

Retaliation claims arise when an employee asserts that her employer discriminated

against her because she engaged in activity protected by the FMLA.  When evaluating an FMLA

retaliation claim, the Eleventh Circuit uses a burden shifting analysis to determine whether the

plaintiff established a prima facie case of retaliation.  *See Smith v. BellSouth*

*Telecommunications, Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).  To establish a prima facie case,

a plaintiff must show that (1) she engaged in statutorily protected conduct: (2) she suffered

adverse action; and (3) a causal connection exists between her protected conduct and the adverse

action.  *Id*.  With respect to the third prong, the Eleventh Circuit has held that "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."  *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2001) (internal citations omitted).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate reason for the adverse action.  *Smith*, 231 F.3d at 1314.  When the defendant meets this burden, the plaintiff must then show that the defendant's reason for the adverse action is pretextual.  *Id*.

**B.  Defendant's Motion for Summary Judgment.**

Defendant's Motion requests summary judgment "as to each of Plaintiff's claims." Subsequently, the parties agreed that Plaintiff would not pursue her claims under the Americans With Disabilities Act.  Defendant's Motion for Summary Judgment is, therefore, **GRANTED** with respect to Count Two's unlawful failure to accommodate claim, Count Three's disparate treatment claim, and Count Four's unlawful termination/retaliation claim brought under the ADA.

**1.  Interference.**

Defendant did not address Plaintiff's claim for interference in its Motion for Summary Judgment.  In her Reply, Plaintiff stated that

> [b]ecause the Defendant has set forth no factual or legal argument, or even addressed the interference claim in its brief (which addresses only the retaliation claim), Ms. Shelnutt will not do so herein.  Regardless, merely to provide context, it is Ms. Shelnutt's position that requiring her to perform work related duties in the form of the completion of a performance improvement plan while on leave

protected by the Act (and then firing her due to her efforts on that very project) constitute interference under the law.

Consequently, Defendant's Reply included an argument that Plaintiff failed to establish a claim for interference.

"Arguments raised for the first time in a reply brief are not properly before the reviewing court." *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) citing *United States v. Benz*, 740 F.2d 903, 916 (11th Cir. 1984); *see also Belfast v. Upsilon Chapter of Pi Kappa Alpha Fraternity*, 267 F. Supp. 2d 1139, 1147 (M.D. Ala. 2003) (considering motions to dismiss and ruling that "the court will not address arguments made for the first time in a reply brief.") The reason for this rule is obvious: the non-moving party should have an opportunity to properly respond to all grounds for summary judgment. Basic fairness dictates such a rule.

Because Defendant did not address Plaintiff's interference claim in its Motion for Summary Judgment, the court will not consider the issue. Plaintiff's interference claim, thus, remains for trial. The only remaining issue before this court is Plaintiff's claim for retaliation under the FMLA.

**2. Retaliation.**

Defendant argues that Plaintiff fails to satisfy the third prong of the *prima facie* case for retaliation because she presented is no evidence of a causal link between Plaintiff's FMLA leave and her subsequent termination. However, Plaintiff asserts that Defendant *did* view her FMLA leave negatively, and that this led to her termination. She testified that Hanshaw made the comment "damn, you're always sick" to her on a few occasions, and that Hanshaw called her at the hospital on March 4, 2004 to ask if she would be at work the next day. Plaintiff also notes

that temporal proximity between the time she returned from FMLA leave and the time she was

fired (1 day later) as sufficient to establish a genuine issue of material fact with respect to

whether retaliation occurred in this case.

> The Eleventh Circuit has recognized that with respect to FMLA retaliation claims, the
>
> close proximity in time between the protected activity and the adverse
> employment decision does not, standing alone, establish the third element of the
> prima facie case.  Instead, the close proximity merely buttresses other evidence
> (direct or circumstantial) in the case indicating that the decision maker had notice
> of the protected activity.

*Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208, n. 10 (11th Cir.

2001).  In other words, temporal proximity does not establish the causal link unless the plaintiff

can also show that the employer knew the plaintiff engaged in protected activity.  *See Brungart v.*

*BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (stating that with respect to an

FMLA claim, "temporal proximity alone is insufficient to create a genuine issue of fact as to

causal connection where there is unrebutted evidence that the decision maker did not have

knowledge that the employee engaged in protected conduct"); *Gupta v. Fla. Bd. of Regents*, 212

F.3d 571, 590 (11th Cir. 2001) (requiring the plaintiff to show that the decision makers were

aware of the protected conduct and that a close temporal proximity existed between the conduct

and the adverse action to establish the causal connection in a Title VII claim); *Farley v.*

*Nationwide Mut. Ins. Co.*, 197 F3d. 1322, 1337 (11th Cir. 1999) (holding that a plaintiff

establishes the causal connection "if he provides sufficient evidence that the decision-maker

became aware of the protected conduct, and that there was close temporal proximity between this

awareness and the adverse employment action" for a retaliation claim under the ADA).  In this

case, the record shows that Defendant knew that Plaintiff engaged in the protected activity of

taking FMLA leave.  This evidence, coupled with the fact that Plaintiff was fired the day she returned from work after taking medical leave, is sufficient to establish a genuine issue of material fact as to the causal connection.

Defendant claims that Plaintiff cannot rebut Defendant's legitimate reason for terminating her employment; thus, Defendant is entitled to summary judgment.  Defendant offers Plaintiff's inadequate/insubordinate performance improvement plan as the direct reason for her termination, but notes that Plaintiff's poor performance evaluation and attendance reports from January and February 2004 also influenced its decision.  The submissions on record support Defendant's assertion, and Defendant adequately meets its burden to show a legitimate reason for the adverse action.

However, Plaintiff also meets her burden to show disputed issues as to Defendant's reasons for firing her.  Plaintiff alleges that Defendant, through Ms. Helton, decided to terminate Plaintiff while she was still on medical leave and *before* Plaintiff had the opportunity to present her performance improvement plan.  Plaintiff cites Helton's deposition testimony that Helton discussed Plaintiff's work performance and Plaintiff's medical leave with NHC Labor Relations representatives Harold Bone and Doran Johnson.  This conversation took place before Plaintiff returned to work, but after Plaintiff went on medical leave.  In that conversation Mr. Bone "agreed with what [Helton] was doing and said to proceed."[1]  Plaintiff cites this conversation as support for her argument that Defendant's reasons for firing her were pretextual, that the decision to terminate her was made before she presented her performance plan, and that the real reason she was terminated was because of her FMLA leave.

---

[1]Pl.'s Ex. 20, p. 20.

Defendant argues that Plaintiff takes Helton's deposition out of context, and that Helton called Bone and Johnson to receive consultative advice about disciplining Plaintiff for her poor performance evaluation.  Defendant notes that nowhere in Helton's deposition does she state that she informed either Bone or Johnson that she was going to terminate Plaintiff.  Furthermore, Defendant cites to interrogatories on record to show that the decision to terminate Plaintiff was not made before Plaintiff submitted her performance plan:

> Ms. Helton contacted Mr. Bone to receive consultative advice both pro and con regarding disciplining Plaintiff after Plaintiff's final performance evaluation. Furthermore, Ms. Helton informed Mr. Bone of her decision to terminate Plaintiff *after* Plaintiff was terminated.  Mr. Doran Johnson, Senior Vice President for South Central Region for National HealthCare Corporation, was contacted by Ms. Helton prior to Plaintiff's termination to inform him of Ms. Shelnutt's final performance evaluation, Ms. Shelnutt's response, and to ask whether he had any advice about additional approaches to take with Ms. Shelnutt prior to taking any disciplinary action.  She also informed Mr. Johnson of her decision to terminate Plaintiff *after* Plaintiff was terminated.[2]

The court determines that a reasonable fact-finder could conclude that Helton's conversations with Bone and Johnson indicated that Helton had already decided to fire Plaintiff before the improvement plan was submitted.  This evidence would suffice to counter Defendant's claim that Plaintiff was terminated because of her insubordinate performance improvement plan. Defendant's Motion for Summary Judgment for the FMLA retaliation claim is, therefore, **DENIED**.

## IV.  CONCLUSION

The court finds that the Motion for Summary Judgment is due to **GRANTED in part** and **DENIED in part**.

---

[2]Def.'s Resp. to Pl.'s First Interrogs., 3 (emphasis added).

Specifically, Defendant's Motion is **DENIED** with respect to Count One's FMLA claims of interference and unlawful termination/retaliation.  Defendant's Motion is **GRANTED** with respect to Count Two's failure to accommodate claim; Count Three's disparate treatment claim; and Count Four's unlawful termination/retaliation claim under the ADA.

DONE and ORDERED this 30th day of September, 2005.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE